

# SUPREME COURT OF MISSOURI
## en banc

CHRISTOPHER KLECKA,      )
     )
        Appellant,      )
     )
v.      )      No. SC99280
     )
TREASURER OF MISSOURI AS      )
CUSTODIAN OF THE SECOND      )
INJURY FUND,      )
     )
        Respondent.      )

*Opinion issued April 26, 2022*

**APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION**

Christopher Klecka appeals the Labor and Industrial Relations Commission's ("Commission") decision reversing the administrative law judge's ("ALJ") award of permanent and total disability ("PTD") benefits against the Second Injury Fund ("Fund"). Because Klecka failed to establish he was rendered permanently and totally disabled as a result of his primary injury and sole qualifying preexisting disability pursuant to section 287.220.3,[1] the Commission's decision is affirmed.

---

[1] All statutory references are to RSMo 2016.

**Background**

In April 2014, Klecka suffered a compensable, work-related injury to his left shoulder, which was his primary injury giving rise to this case. He settled the primary claim with his employer, J & J Welding, for 35 percent, or 81.2 weeks, of permanent partial disability ("PPD") of the left upper extremity and 21.5 percent, or 60 weeks, of PPD of the body as a whole for the resulting psychiatric injury of depression. Klecka then brought a claim against the Fund, alleging his primary injury, combined with the following prior injuries, rendered him PTD:

a) 1981 traumatic brain injury sustained in a motor vehicle accident;

b) 1982 left knee surgery to correct frequent dislocations;

c) 2005 right thumb work-related injury that settled for 15 percent, or nine weeks, of PPD;

d) 2006 hernia that settled for 7.5 percent, or 30 weeks, of PPD;

e) 2007 right shoulder injury that settled for 35 percent, or 81.2 weeks, of PPD.

In support of his claim, Klecka relied on expert opinions from Dr. David Volarich and two vocational experts, Delores Gonzalez and James England. Dr. Volarich opined that, if a vocational expert was unable to find a suitable job for Klecka, then he was PTD as a "direct result of the work-related injury of [April 2014] in combination with his preexisting medical conditions, including his closed head injury." Gonzalez concluded Klecka was PTD because of the combination of his primary injury and prior injuries,

2

including his hernia, thumb injury, and right shoulder injury. England determined Klecka was PTD based on restrictions imposed by Dr. Volarich.[2]

In May 2019, an ALJ issued an award against the Fund for PTD benefits. The ALJ determined Klecka's primary injury, combined with his previous shoulder injury and additional disabilities, rendered him permanently and totally disabled. The Fund appealed the award to the Commission, claiming the ALJ misapplied section 287.220.3 by including all of Klecka's previous injuries and disabilities, qualifying and non-qualifying, in her analysis. The Fund argued the ALJ instead was limited to considering whether Klecka's primary injury and any *qualifying* preexisting disabilities of at least 50 weeks were sufficient to render him permanently and totally disabled.

On appeal, the Commission provided the following ratings for Klecka's prior injuries:

a) 1981 traumatic brain injury: no PPD;

b) 1982 left knee surgery: no PPD;

c) 2005 right thumb injury: 15 percent, or nine weeks, of PPD;

d) 2006 hernia: 7.5 percent, or 30 weeks, of PPD;

e) 2007 right shoulder injury: 35 percent, or 81.2 weeks, of PPD.

Notably, only one of those injuries—the 2007 right shoulder injury—equaled a minimum of 50 weeks of PPD and was, therefore, a qualifying preexisting disability. The

---

[2] Klecka also presented an expert opinion from Dr. Adam Sky, a psychiatrist, who rated the psychiatric disability stemming from his left shoulder injury at 40 percent PPD of the body as a whole. Dr. Sky further opined Klecka would have a difficult time following directions, checklists, and precautions, as well as working any job that requires persistence and pace.

3

Commission also rated Klecka's primary injury at 35 percent PPD of the left shoulder and 15 percent PPD of the body as a whole for the resulting psychiatric injury.

The Commission then made several factual findings regarding the opinions provided by Klecka's experts. First, Dr. Volarich "made clear" his conclusion that Klecka was permanently and totally disabled included consideration of the effects of his 1981 head injury, 2005 thumb injury, and 2006 hernia. Similarly, Gonzalez admitted in her deposition that she also considered the effects of Klecka's prior head injury, thumb injury, and hernia in determining he was permanently and totally disabled. Further, England's opinion that Klecka was permanently and totally disabled relied on the restrictions imposed by Dr. Volarich, which were based, in part, on the effects of Klecka's prior hernia and thumb injury. The Commission concluded there was no evidence in the record to suggest Klecka was permanently and totally disabled as a result of his primary injury and his sole qualifying disability, his 2007 right shoulder injury.

The Commission then turned its attention to section 287.220.3. Specifically, it considered:

> whether an employee is entitled to [Fund] benefits whe[n] his claimed [PTD] does not result from a combination of the primary injury and preexisting disability that satisfies the enumerated criteria under [section 287.220.3(a)], but rather from the combination of his primary injury and *all* of his claimed preexisting disabling conditions, including those conditions that do not satisfy [section 287.220.3(a)].

The Commission ultimately concluded the language of section 287.220.3 requires preexisting disabilities to satisfy section 287.220.3's requirement of equaling a minimum of 50 weeks of PPD to be considered in a PTD claim against the Fund. Consequently, the

4

Commission reversed the ALJ's award because it found Klecka failed to show he was rendered permanently and totally disabled as a result of his primary injury and his sole *qualifying* preexisting disability—the 2007 right shoulder injury. Klecka now appeals the Commission's decision.[3]

## Standard of Review

The Commission's decision must be "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. On appeal, the Commission's factual findings shall be conclusive and binding in the absence of fraud, and no additional evidence shall be heard. Section 287.495.1. This Court also defers to the Commission's determinations regarding the credibility of witnesses and the weight given to conflicting evidence. *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020). On appeal, this Court:

> shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1(1)-(4).

---

[3] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

5

**Analysis**

The issue in this case is whether the Commission erred in determining Klecka failed to establish he is entitled to PTD benefits from the Fund. Under section 287.220.3, employees must meet two conditions to make a compensable PTD claim against the Fund. First, the employee must have at least one qualifying preexisting disability, which must be medically documented, equal at least 50 weeks of PPD, and meet one of four listed criteria in section 287.220.3(2)(a)a(i)-(iv).[4]

Second, the employee must show he "thereafter sustains a subsequent compensable work-related injury [often referred to as the primary injury] that, when combined with the preexisting disability[,] ... results in a permanent total disability as

---

[4] The injury must be:

    (i)      A direct result of active military duty in any branch of the United States Armed Forces; or

    (ii)     A direct result of a compensable injury as defined in section 287.020; or

    (iii)    Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or

    (iv)    A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear[.]

Section 287.220.3(2)(a)a(i)-(iv).

defined under this chapter."  Section 287.220.3(2)(a)b.  As this Court recently explained

in *Treasurer of State v. Parker*, 622 S.W.3d 178, 182 (Mo. banc 2021):

> [A]n employee satisfies the second condition by showing the primary injury
> results in PTD when combined with **all** preexisting disabilities ***that
> qualify*** under one of the four eligibility criteria listed in the first condition.
>
> . . . .
>
> The existence of non-qualifying disabilities does not count against (or for)
> the claimant in evaluating whether he meets the second threshold condition.
> In other words, two claimants with identical qualifying preexisting
> disabilities and primary injuries should be evaluated the same way when
> determining if they meet the second condition regardless of whether one has
> additional non-qualifying disabilities.

Klecka argues the Commission erred in reversing the ALJ's award by: 1) ignoring

the overwhelming weight of the evidence presented and 2) failing to consider other

non-medical factors, which hindered his employability.[5]  He asserts the restrictions

Dr. Volarich imposed for his primary and sole qualifying preexisting injury, when

combined with his "impoverished education, complete lack of transferrable skills, and

poor physical appearance," render him permanently and totally disabled due to a

combination of the primary and qualifying preexisting injury.  He further notes all of the

evidence indicated he is permanently and totally disabled, there were no medical or

vocational opinions that indicated the contrary, and the Commission made no finding that

any of his experts were not credible.

---

[5] Klecka also contends the Commission failed to consider his depression, but this assertion is
incorrect, as the Commission considered his depression as part of his primary injury.

7

Regardless of whether the Commission found his experts to be credible or whether any contrary evidence was presented, Klecka's arguments misconstrue the requirements for Fund liability under section 287.220.3 as well as the Commission's ruling. Whether a claimant is permanently and totally disabled and whether that claimant is entitled to PTD benefits from the Fund are entirely distinct questions. PTD is defined as the inability to return to any employment, not merely the employment in which the employee was engaged at the time of the accident. Section 287.020.6. "The test for permanent total disability is the worker's ability to compete in the open labor market ...." *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015). "The ability to compete in the open labor market hinges on whether, in the ordinary course of business, any employer would be reasonably expected to hire the individual given his or her present physical condition." *Id.* at 665. Yet, even if a claimant shows he is permanently and totally disabled under that standard, he is entitled to Fund benefits only if he shows his PTD is the result of his primary injury combined with any qualifying preexisting disability. Section 287.220.3(2)(a)b.

Klecka's experts' opinions that he is permanently and totally disabled were not sufficient to show he was entitled to Fund benefits. Their testimony considered his *non-qualifying* preexisting disabilities in their PTD analysis. Dr. Volarich and Gonzalez both stated they factored Klecka's non-qualifying head injury, thumb injury, and hernia into their conclusions, and England's conclusion was based entirely upon Dr. Volarich's report. Non-qualifying preexisting disabilities cannot be considered in determining whether a claimant satisfies the second condition of section 287.220.3. *Parker*, 622

8

S.W.3d at 182. There was no evidence Klecka's primary injury, combined with his qualifying preexisting disability, resulted in PTD because he failed to elicit testimony from any of his experts indicating he would still be rendered permanently and totally disabled, absent his non-qualifying injuries.

Klecka, however, correctly observes section 287.220.3 does not prohibit the consideration of other "life factors," including, but not limited to, those discussed by Klecka—age, education, transferable skills, and physical appearance. While it is not clear from the record whether the Commission considered such factors in its analysis, it is proper to do so under section 287.220.3. Regardless, Klecka's evidence was undermined by his experts improperly incorporating his non-qualifying preexisting disabilities into their opinions. As such, the Commission did not err in determining Klecka's evidence failed to satisfy the standard for establishing Fund liability for PTD benefits under section 287.220.3.

## Conclusion

The Commission's findings were supported by substantial and competent evidence. Klecka failed to establish his primary injury and sole qualifying preexisting disability entitled him to PTD benefits from the Fund under section 287.220.3. Accordingly, the Commission's decision is affirmed.

_____
Mary R. Russell, Judge

Wilson, C.J., Powell, Breckenridge, Fischer and Ransom, JJ, concur;
Draper, J., dissents without opinion.